UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARCUS DONTE MIDDLEBROOK,

        Plaintiff,

v.

JOSEPH NOVAK et al.,

        Defendants.

_____/

Case No. 1:18-cv-1139

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

### Discussion

    **I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues ICF Librarian Technician Joseph

Novak and an unidentified attorney (Unknown Party) from the law firm of Peterson Paletta Balice, PLC.

Plaintiff alleges that he has mild mental retardation and limited education, which prevent him from accessing the courts without assistance. In addition, Plaintiff states that he is housed in segregation, making a legal writer essential. On September 22, 2017, Plaintiff sent a letter to Defendant Novak, requesting the services of the legal writer program. Defendant Novak granted his request, and inmate Brancaccio was appointed as Plaintiff's legal writer.

On November 27, 2017, Brancaccio drafted a "claim of appeal for judicial review." (Compl., ECF No. 1, PageID.3.) Plaintiff filed the document in a timely manner, but it was disapproved by the court on December 5, 2017, because Plaintiff had neither paid the filing fee nor filed the documents necessary to apply to proceed *in forma pauperis*. Brancaccio drafted and Plaintiff filed a motion to waive the filing fee. The motion was granted on January 17, 2018.

Plaintiff apparently could not understand the issues raised by Brancaccio in the claim of appeal. On February 26, 2018, Plaintiff asked prisoner Lamont James Miller (a/k/a/ Money Mont) to review the document. Prisoner Miller told Plaintiff that the appeal document was not properly drafted and that the issues were not properly raised, both because the issues had not been exhausted in his request for rehearing and because the cases cited were not relevant.

Having heard prisoner Miller's criticisms of Brancaccio's appeal, Plaintiff wrote the court a letter on March 5, 2018, asking the court to postpone ruling on the appeal and to grant Plaintiff time to correct his mistakes and file a supplemental brief. On March 6, 2018, Plaintiff wrote a letter to prisoner Brancaccio outlining Brancaccio's errors. He gave the letter to Defendant Novak and asked Novak to deliver it. Plaintiff wrote a letter to Defendant Novak on March 7, 2018, asking Novak to replace Brancaccio with another legal writer. Defendant Novak sent

prisoner Brancaccio to Plaintiff's cell to tell Plaintiff that everything would be alright and that Plaintiff should be patient. The following day, March 8, 2018, Plaintiff sent another letter to Defendant Novak, complaining about delays in copying his documents and asking why Defendant Novak had sent Brancaccio to his cell rather than appointing a new legal writer.

On March 15, 2018, Plaintiff received a response from the court to his request to postpone the ruling on his request for judicial review. The court denied the motion, but advised Plaintiff that he could file a brief on appeal in the Michigan Court of Appeals not later than March 18, 2018, in which he could raise the issues mentioned in the March 5, 2018, letter. On March 16, Plaintiff sent a letter to Defendant Novak to give to prisoner Brancaccio, asking that Brancaccio draft a motion for extension of time to file a brief on appeal, because he realized that there was insufficient time to file a timely brief. He received no response.

On March 18, 2018, during an interview with Library Technician Philip Zupon about a grievance Plaintiff had filed on Novak and Unknown Party, Plaintiff told Zupon that he was going to miss his March 18, 2018, deadline to file a brief on appeal. Zupon told Plaintiff that he would talk to Defendant Novak.

Plaintiff apparently received a draft motion for extension of time by Brancaccio, and he filed it, despite the fact that Brancaccio had included the numbers of two different prisoners on the motion. Plaintiff had pointed out the error and asked for a redrafted motion, but Brancaccio refused to return. On April 2, 2018, Plaintiff received a letter from the court, requiring him to correct the mistakes in his motion and to serve a copy on the Respondent not later than April 12, 2018. Plaintiff showed the letter to Defendant Novak on April 5, and Novak told Plaintiff that he would inform Brancaccio about the issue as soon as he left the unit. On April 10, Plaintiff gave a copy of the letter to Officer Vannortrick to give to Acting Deputy Warden Gary Miniard.

Vannortrick advised Plaintiff that he would contact Defendant Novak about the matter. On April 16, Plaintiff wrote to Defendant Novak again, asking why he had received neither a response nor a redrafted motion from Brancaccio. On April 21, 2018, Plaintiff received an order from the court, dismissing the claim of appeal for failure to meet the April 12, 2018, deadline.

Plaintiff alleges that Defendant Novak failed to perform his duties to oversee the legal writers program, as set forth under ICF-OP 05.03.116 and MDOC Policy Directive 05.03.116 ¶¶ R-V. He alleges that the unknown attorney (Defendant Unknown Party) failed to properly supervise the legal writers under the same policies. Plaintiff alleges that Defendants knew or should have known of the acts or omissions of those under their supervision and therefore are responsible for their subordinates' intentional or arbitrary violations of policy. He also alleges that, by not meeting their obligations to supervise, Defendants violated his right of access to the courts, causing his claim of appeal to never properly be raised and ultimately to be dismissed. Plaintiff contends that the failures also violated his right to procedural due process by preventing him from exercising his opportunity to appeal.

Plaintiff seeks declaratory and injunctive relief, together with compensatory, punitive, and exemplary damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

A.  Defendant Novak

Plaintiff alleges that Defendant Novak violated his rights by not adequately supervising the legal writers and not replacing prisoner Brancaccio with another legal writer, as Novak was obligated to do under ICF-OP 05.03.116 and MDOC Policy Directive 05.03.116 ¶¶ R-V. Plaintiff contends that Novak's failure to supervise also denied him his right of access to the courts, because it prevented him from filing a proper motion for extension of time to file a brief on appeal and ultimately resulted in his appeal being dismissed. Plaintiff also argues that Defendant Novak's failures to oversee the legal writers program resulted in a denial of Plaintiff's right to receive due process by way of an appeal of the denial of a petition for judicial review.

To the extent that Plaintiff alleges that Defendant Novak violated prison policy, he fails to state a federal constitutional claim. Claims under § 1983 can only be brought for

5

"deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or policy. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992). Plaintiff's assertion that Defendant Novak violated prison policy therefore fails to state a claim under § 1983.

Moreover, Plaintiff's allegations that Defendant Novak failed to properly supervise the legal writers program falls short of alleging a violation of § 1983. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendant Novak engaged in any active unconstitutional behavior. Instead, he simply alleges that Defendant Novak failed to take sufficient action to ensure that the assigned legal writer drafted Plaintiff's documents correctly and in a timely fashion. Such allegations fall short of stating an actionable § 1983 claim.

Further, even if Plaintiff successfully alleged that Defendant Novak engaged in active conduct, Plaintiff fails to allege facts supporting his claim that he was denied access to the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating

7

> capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Here, Plaintiff utterly fails to allege the nature of the underlying cause of action, as required by *Christopher*, 536 U.S. at 415. He simply claims that he was filing a petition for judicial review of an unspecified matter and an appeal of the same. Plaintiff does not suggest that he was filing a direct appeal of his conviction, a habeas corpus application, or a civil rights claim, as required to state an access-to-the-courts claim. *See Thaddeus-X*, 175 F.3d at 391. Moreover, he provides no information about the nature of the petition for judicial review that would suggest that his legal action was nonfrivolous. *Lewis*, 518 U.S. at 351-53.

Finally, to the extent that Plaintiff attempts to claim a violation of due process, his allegations are woefully inadequate. "[P]rocedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." *Howard v. Grinage*, 82 F.3d 1343, 1349-50 (6th Cir. 1996) (citing *Daniels v. Williams*, 474 U.S.

327 (1986)). A claim of negligence is insufficient to support a § 1983 claim. *Daniels*, 474 U.S. at 333-36. Instead, to state a procedural due process claim, a plaintiff must allege a constitutionally arbitrary deprivation. *Id.*; *Howard*, 82 F.3d at 1350 ("'[A]rbitrary in the constitutional sense' for procedural due process purposes means conduct undertaken with something more than negligence."). To state a claim based on the deprivation of procedural due process, the "conduct must be grossly negligent, deliberately indifferent, or intentional." *Howard*, 82 F.3d at 1350.

Here, Plaintiff recites no allegations indicating the sort of arbitrary deprivation that would implicate due process. Plaintiff alleges no more than that Novak did not ensure that prisoner Brancaccio correctly briefed his case or properly and timely sought an extension of time to appeal the denial of his petition for judicial review. Such allegations state a claim for negligence only. As a consequence, to the extent that Plaintiff was deprived of any appellate right, he fails to state a procedural due process claim.

For all these reasons, Plaintiff fails to state a claim against Defendant Novak.

B. <u>Unknown Attorney at Peterson Paletta Balice</u>

Plaintiff alleges that the unknown attorney at the private law firm of Peterson Paletta Balice PLC failed to ensure that the legal writer properly and timely drafted Plaintiff's appellate brief and motion to extend time to file a brief. Plaintiff's claims against the unknown attorney, like his claims against Defendant Novak, fail for numerous reasons.

First, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v.*

9

*Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

In *Polk County v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that even constitutionally required, appointed defense counsel performs a private, not an official, function:

> In our system[,] a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interest of his client." This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

454 U.S. at 318-19 (footnotes omitted). The Supreme Court further held that this is true even of the state-appointed and state-paid public defender. *Id.* at 321. Once a lawyer undertakes the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serves in a legal aid or defender program. *Id.* at 323. Even though a public defender is paid by the state, he or she does not act under color of state law in representing the accused. *Id.* at 325. Rather, defense counsel—whether privately retained or paid by the state— acts purely on behalf of the client and free from state control. *Id*. The Sixth Circuit has adhered to the holding in *Polk County* in numerous decisions. *See, e.g., Floyd v. Cty. of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012) (holding that, when performing traditional functions as counsel, a public defender is not a state actor); *Powers v. Hamilton Cty. Pub. Defender*, 501 F.3d 592, 611 (6th Cir. 2007) (same); *Harmon v. Hamilton Cty. Court of Common Pleas*, 83 F. App'x 766, 767 (6th Cir. 2003).

10

Here, Plaintiff is not constitutionally entitled to the appointment of counsel to represent him in his unspecified petition for judicial review. The state's obligation therefore is far less than that required on direct criminal appeal. As a consequence, if the payment for constitutionally required legal assistance fails to create state action, the mere payment of an attorney to oversee the provision of minimal assistance to those incapable of litigating their own claims necessarily fails as well.

Second, even assuming that Defendant is a state actor, Plaintiff, at best, suggests that Defendant was negligent in its supervision of prisoners assisting others under the legal writers program. As previously discussed, an individual defendant may not be held liable for negligent conduct or for the unconstitutional conduct of his or her subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495.

Third, for the same reasons that Plaintiff's allegations are insufficient to support an access-to-the-courts or due-process claim against Defendant Novak, they are insufficient to support such claims against the unknown attorney from Peterson Paletta Balice PLC.

For all of these reasons, Plaintiff fails to state a claim against the unknown attorney at Peterson Paletta Balice PLC.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   November 9, 2018                     /s/ Paul L. Maloney
                                                              Paul L. Maloney
                                                              United States District Judge